UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| **KIMBERLY PERRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:15 CV 397** |
| | ) | |
| **CITY OF FORT WAYNE,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION and ORDER

Plaintiff Kimberly Perry alleges violations of her civil rights arising out of a search of her home conducted by members of the Fort Wayne Police Department. (DE # 17.) She brings claims against the City of Fort Wayne along with individually-named officers of the Fort Wayne Police Department ("FWPD").[1] Defendants have moved for summary judgment on all of plaintiff's claims. (DE # 24.) Plaintiff has filed a response (DE # 27), defendant has filed a reply (DE # 29), and the motion is now ripe for ruling. For the following reasons, defendants' motion for summary judgment is granted in its entirety.

---

[1]The individual defendant officers are Sergeant Timothy Strausborger, Officer Anthony Shefferly, Detective Martin Grooms, Detective George Nicklow, Officer Michael Bell, Officer Kerry Haywood, Sergeant Timothy Hughes, Detective Christopher McCarty, Detective Anthony Smith, Detective Tad Davis, Officer Phillip Bartrom, Captain Kevin Hunter, Lieutenant Lisa Williams, Officer Greg Stier, Detective Juancarlos Gutierrez, Detective Tina Blackburn, Detective James Chambers and Detective Kurt Franceus.

## I.   FACTS AND BACKGROUND

In the summary that follows, the court refers only to undisputed facts, or, if there is a dispute, notes that it exists and relies on the version of the fact, or inference therefrom, that is most favorable to plaintiff. This summary provides an overview. Additional undisputed facts will be referred to in the analysis that follows.

Plaintiff Kimberly Perry resides at 6725 Del Rio Dr., in Fort Wayne, Indiana. (DE # 17 at 7.) Kimberly is the mother of three adult sons: Christopher, Jason and Zachary Bloomfield. On July 3, 2014, her three sons were arrested for narcotics-related offenses after FWPD executed search warrants on their residences at 1502 Third Street and 2737 West Washington Center Road, Lot #45 in Fort Wayne, Indiana. (DE # 24-1 at ¶ 3.)

Those warrants arose out of a tip from a concerned citizen who related to FWPD that Christopher and Zachary were dealing large amounts of a synthetic drug known as "spice." (*Id.* at 8.) The concerned citizen related that he observed Christopher Bloomfield counting a large sum of cash proceeds from these sales and noted that Christopher regularly kept all proceeds in a safe at his mother's house. (*Id.*)

In the course of the raid, officers seized 940 grams of spice, $3,600 in cash, digital scales, drug paraphernalia and two handguns. (DE # 27-1 at 3-4.) While he was in custody, Christopher Bloomfield admitted to FWPD officers that he was dealing spice. (DE # 24-1 at ¶ 9.) Jason Bloomfield likewise admitted to dealing spice and added that the brothers' supplier was an individual known as "Bobby." (*Id.* at ¶¶ 16, 18.) Zachary also confirmed that Bobby was their main supplier. (*Id.* at ¶ 23.)

That same day, FWPD Detective Shane Heath listened in on several recorded jail phone calls made by Christopher Bloomfield. (*Id.* at ¶ 24.) In one call, Christopher contacted an individual who answered the phone as "Bobby." (*Id.*) During this phone call, Bobby related that, after his arrest, Christopher's mother had taken his safe. (*Id.* at ¶ 24(d).) Christopher admonished Bobby not to discuss that over the phone, but returned to the subject asking, "she took off with my shit?!" (*Id.*) Christopher provided his mother's name and phone number and asked Bobby to contact her on his behalf. (*Id.*)

Next, he called his girlfriend, Kristyn Logan. (*Id.* at ¶ 24(e).) She likewise related that Christopher's mother had taken his safe. (*Id.* at ¶¶ 24(f)-(g).) She stated that his mother was "missing in action" and said "so much for trusting that bitch, your mother took off with the safe!" (*Id.*)

After his July arrest, Christopher apparently remained involved in narcotics-related activities. As of September, 2014, FWPD had an active investigation of a spice dealing ring in Fort Wayne, at the center of which were Christopher Bloomfield, Robert "Bobby" Wiseman and an individual named Zachary Brockaway. (*Id.* at 11.) Working with a confidential informant, FWPD were able to complete a number of controlled buys from Brockaway and his associates. (*See id.* at 12-14.)

On September 18, 2014, FWPD received a further anonymous tip that Christopher Bloomfield was dealing spice at 1014 Shore Drive. (*Id.* at 14.) Utilities at that address were registered in the name of Christopher Bloomfield's girlfriend, Kristyn

3

Logan. (*Id.*) In the driveway at the Shore Drive residence, officers observed a white 1976 Pontiac TransAm that was "falsely registered" in Kimberly Perry's name. (*Id.*) The registration was false in the sense that the license plate on the TransAm had actually been issued for a black 2000 Buick Regal under Kimberly Perry's name and address on Del Rio Drive. (DE # 28-1 at 2.)

Detective Heath included all of this information in a Search Warrant Affidavit that was presented to Allen Superior Court Judge Wendy Davis. (DE # 25-1 at 5.) On October 2, 2014, Judge Davis authorized a search warrant for the various residences implicated in the spice dealing investigation. (DE # 24-1 at 19-21.) Kimberly Perry's home on Del Rio Drive was included. (*Id.*) The warrant provided:

> You are instructed to diligently search for the following described evidence of Corrupt Business Influence and illegal drug activity including: synthetic drug or synthetic drug lookalike substances, and/or derivatives thereof, United States Currency, firearms and/or weapons, records of drug transactions, USPS information, shipping information and/or other financial information related to drug trafficking and racketeering activity and cellular phones and/or other electronic computing devices (including internal call logs, messages, messaging apps and other electronically stored information relating to drug trafficking and racketeering activity which once seized will be forensically analyzed), and safes and/or lockboxes.
>
> You are further ordered to seize such property and/or evidence, or any part thereof, found on such search.

(*Id.* at 21.)

The search warrant was served on Kimberly Perry's home on the morning of October 6, 2014. (DE # 27-3 at 1-2.) The officers on scene were assigned to one of two teams. The "entry team" executed the initial steps of the search warrant including

4

knocking, announcing the warrant, breaching the front door (if necessary), clearing the residence of all suspects, and forming a security perimeter around the residence. (*See* DE # 25-1 at 6.) Members of the entry team included defendant officers Strausborger (*id.* at 5), Grooms (*id.* at 6), Nicklow (*id.* at 7), McCarty (*id.* at 8), Smith (*id.* at 9), Davis (*id.* at 10), Hughes (*id.* at 11), Schefferly (*id.*), Haywood (*id.* at 12), Bell (*id.* at 13), and Bartrom (*id.*).

The remaining officers comprised the "search team" which was responsible for conducting the evidence search within Ms. Perry's residence. The search team included defendant officers Hunter (*id.* at 14), Williams (*id.*), Blackburn (*id.* at 15), Stier (*id.* at 16), Franceus (*id.* at 17), Gutierrez (*id.*), and Chambers (*id.* at 18).

In an affidavit, Perry attested that she was sleeping when the warrant was served and was awoken by a "loud noise or bang of some kind." (DE # 27-3 at 2.) As she headed down the stairs, she heard officers counting the seconds before breaching her front door with a ram.[2] (*Id.*) Instinctively, she shepherded her dog into the garage for its safety before surrendering to the officers at the front door. (*Id.*) There she was placed in handcuffs and detained in the front yard while the entry team officers performed an initial search for other occupants. (*Id.*)

Perry has also included as an exhibit, the body camera footage of one of the entry team officers. (DE # 26.) A review of that footage reveals that the entry team officers

---

[2]Defendants Smith and Davis are the two officers who deployed the ram to breach the front door. (DE # 25-1 at 9-10.)

approached Perry's front door and took up position before one officer loudly pounded on the door and yelled "Fort Wayne Police. We have a warrant. Come to the door." (*Id.*) Immediately thereafter, multiple officers loudly counted out ten seconds in unison. (*Id.*) During the ten count, there appears to be some sort of movement on the other side of a frosted glass windowpane adjacent to the door. (*Id.*) At the conclusion of the count, one officer remarked "some movement [inside]" which prompted another officer to shout "police search warrant." (*Id.*) Almost immediately thereafter, an officer gave the command to "hit it [the door]" and two officers struck the door open with their ram. (*Id.*) Based on the time signature of the video, the total time that elapsed between the first knock and the forced entry into the home was approximately 20 seconds. (*Id.*) Just after the door was breached, Perry appears in the doorway area before darting into the other room (presumably to corral her dog). (*Id.*)

During the initial search, Perry was detained in her front yard. (DE # 27-2 at 5.) She described the morning "cold" and states that she was detained in the yard for about 30 minutes before she was detained in a squad car for another two and a half hours. (DE ## 27-3 at 2; 27-2 at 11.) During this time she was briefly unhandcuffed and lead inside to further secure her dog in the garage so that the entry team could complete their initial search. (DE # 27-2 at 5.) Beyond placing her in handcuffs, Perry testified that the entry team officers did not use any other type of force on her. (DE # 24-20 at 4-5.) After performing the initial sweep, members of the entry team formed a security perimeter and did not undertake any further actions at the residence.

6

After the entry team secured the area, the search team arrived on scene. In the course of conducting the evidence search, Perry alleges that her house was "ransacked" and that the contents of her cabinets and drawers were emptied out on to the floor or thrown into the bathtub. (DE # 27-3 at 4.) Furthermore perry claims that an antique picture was destroyed during the search. (*Id.*) Officers seized some of Perry's personal property, including two cell phones, some mail/paperwork and, according to Perry, $750 in cash. (DE # 27-3 at 4.) This property was photographed and inventoried by defendant Blackburn. (DE # 25-1 at 15-16.) The cell phones were recovered by defendant Stier while the cash was recovered by defendant Williams. (DE # 24-15 at 2.) According to Williams and Blackburn, the total amount of cash seized was $651. (*Id.*; 24-14 at 2.) No drugs or other contraband was recovered and Perry was not charged with any crimes stemming from the search.

Lastly, during the evidence search, defendant Gutierrez "accidentally stepped through the ceiling while checking the attic space."(DE # 24-18 at 2.) Beyond this, all of the search team officers deny that they caused any damage to Perry's property. (DE # 25-1 at 14-18.) Perry alleges that defendants have neither returned her personal property nor have they initiated forfeiture proceedings. (DE # 27-3 at 4.) She further states that the damage to her ceiling was estimated at $1,200 and the estimated damage to her front door was between $1,848 and $2,007. (DE ## 27-2 at 10; 27-3 at 4.)

Perry filed this suit pursuant to 42 U.S.C. § 1983 alleging violations of her constitutional rights. She brings the following claims against the individual officers:

7

Fourth Amendment claims for excessive and unreasonable force, unreasonable search and seizure and false arrest (DE # 17 at 2), a Fourteenth Amendment claim for wrongful seizure of property without due process (*id*. at 4), failure to intervene (*id*.), and state law claims for false arrest, false imprisonment, trespass, and theft. (*id*. at 2). Perry also raises a claim for *respondeat superior* liability against the City of Fort Wayne predicated upon the defendants' commission of the state law claims. (*Id*.) Plaintiff's complaint seeks both compensatory and punitive damages based upon defendants' conduct. (*Id*. at 5.)[3]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict

---

[3]In her response, Perry concedes her claims for theft and failure to intervene. (DE # 27 at 18.) Summary judgment is granted as to those claims.

for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995). Importantly, the court is "not required to draw every conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991).

## III. DISCUSSION

### A. *Fourth Amendment Search and Seizure*

#### i. *Unlawful Search*

The first sub-group of Perry's Fourth Amendment claims relates to the overall lawfulness of the defendant officers' search of her home. The Fourth Amendment guarantees the right of the people to be secure in their persons, houses and effects against unreasonable searches and seizures. U.S. Const. amend. IV.

In this case defendants possessed a search warrant for Perry's home issued by

9

Judge Davis of the Allen Superior Court. Perry contends that the warrant was invalid because Officer Heath's search warrant affidavit was based upon "false/reckless statements and serious omissions" regarding her connection to the spice dealing ring. (DE # 27 at 8.) Both parties extensively discuss Officer Heath's actions and his potential liability in obtaining the warrant. (*See* DE ## 25 at 4-7; 27 at 8-16; 29 at 3-8.) However, Officer Heath is not a named party to this action and the court need not wade into the issue of his liability.

Rather, the named defendants in this action who executed the warrant will only be liable if their reliance on the warrant was not in good faith. Assuming for the moment that the warrant was actually invalid, "an officer who relies on a subsequently invalidated warrant may be liable for § 1983 damages only if the warrant application was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)). Thus, the test for qualified immunity in this instance is the same standard as the good-faith exception to the exclusionary rule. *Id.*

In her response, Perry concedes that, as to the defendant officers, "the warrant was not so obviously lacking in probable cause as to appear deficient on its face." (DE # 27 at 16.) As such, because defendants could reasonably rely upon the warrant in good faith, they are entitled to qualified immunity on Perry's unlawful search claim.

   ii.     *Unreasonable Search Claims*

The next sub-group of Perry's Fourth Amendment claims relates to the manner

in which the officers entered her home and conducted their search. Specifically, she claims that the officers acted unreasonably when they forcibly entered her home and caused extensive damage therein.

Perry claims that the entry team officers violated the "knock and announce" requirement of the Fourth Amendment when they breached the door to her house. "[T]he Fourth Amendment's proscription of unreasonable searches and seizures incorporates the requirement that law enforcement officers entering a dwelling with a search warrant must knock on the door and announce their identity and intention before attempting forcible entry." *United States v. Espinoza*, 256 F.3d 718, 723 (7th Cir. 2001) (citing *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995)). A "necessary corollary" of the knock and announce requirement is that officers must wait a reasonable amount of time after announcing their presence and intention to serve a search warrant before attempting a forcible entry. *Id.*

Compliance with the requirement to wait a reasonable amount of time is decided on a case-by case basis. *Molina ex rel. Molina v. Cooper,* 325 F.3d 963, 972 (7th Cir. 2003). "[T]here is no bright-line rule delineating the boundary between a reasonable and unreasonable amount of time for officers to wait." *Espinoza,* 256 F.3d at 722. In the case of a search warrant related to drug activity, "the Supreme Court has suggested that the police need not hold off for more than 15 or 20 seconds." *United States v. Collins,* 510 F.3d 697, 699 (7th Cir. 2007) (citing *United States v. Banks,* 540 U.S. 31 at 37-38, n.5, (2003)); *see id.* ("Maybe 10 seconds are enough. *United States v. Cline,* 349 F.3d 1276, 1288-

90 (10th Cir. 2003). Maybe less, as in *United States v. Markling*, 7 F.3d 1309, 1318 (7th Cir.

1993) (7 Seconds), where the knock was on the door of a small room in a motel.").

Turning to the facts of this case, the video evidence shows that a total of 20

seconds elapsed before the officers made forcible entry to the house. This was a drug-

related warrant. However the exigency is somewhat lessened by the fact that, based on

the warrant affidavit, Perry's purported role in the drug dealing operation was only

that she safeguarded cash proceeds for her son. There was no indication at the outset

that she might be armed or in possession of readily-destroyed narcotics contraband. *See,*

*Jones v. Wilhelm,* 425 F.3d 455, 468 (7th Cir. 2005)(Finding a lack of exigency where

officers waited only two seconds before forced entry and where "nothing in the warrant

suggested or predicted a particular risk of violence or destruction of evidence."); *cf.,*

*Molina,* 325 at 966 n.1 (search warrant classified as "high risk" because target's criminal

history, gang affiliation and stash of weapons).

Even in the absence of any exigent circumstances, officers may nevertheless

forcefully enter a home if they are refused admittance. *United States v. Jones*, 208 F.3d

603, 609-10 (7th Cir. 2000). The phrase "refused admittance" is not restricted to

affirmative refusals but also includes "circumstances that infer a refusal." *Id.* at 610

(citing *United States v. Bonner,* 874 F.2d 822, 824 (D.C. Cir. 1989)). Here, Perry's

testimony is that she was at or near the doorway as the officers forced entry. The

officers testified that they saw a figure in the doorway through a frosted glass

windowpane. Yet, Perry neither opened the door nor verbally responded to the officers.

As such, her presence and silence in the doorway could support the inference that she refused admittance to the officers. *See id.*, (after 13 seconds, officers were justified in inferring that failure to acknowledge officers' presence or open door constituted refused admittance); *cf., Armstrong v. Furge,* No. 105 CV 378, 2007 WL 496381, at *7 (N.D. Ind. Feb. 12, 2007) ("the officers should have waited more than one or two seconds to break down the door after hearing the Plaintiff respond to their second knock.").

Thus, while the exigencies may be limited in this case, the officers could reasonably infer refused admittance based on Perry's presence in the doorway coupled with her silence in response to the officers' commands. Weighing all of the circumstances, the court finds that the officers waited a reasonable amount of time before forcing entry into Perry's home.

Moreover, even if 20 seconds was not a reasonable interval, the officers would be protected by qualified immunity. The contours of this area of law are not sufficiently well-defined, and Perry has not cited any case that would serve to put a reasonable officer on notice that, in this instance, 20 seconds was an unreasonable amount of time to wait before forcing entry into Perry's home. *Molina,* 325 F.3d at 972.

The second facet of Perry's unreasonable search claim is that the defendant officers conducted the search in an unreasonable manner, causing damage to Perry's property. Specifically, Perry's claims concern the damage to her door, her ceiling, and her antique picture. The court will address each in turn.

Perry's claim regarding the damage to her front door is a nonstarter. The court

13

has determined that the officers' forcible entry into Perry's home was reasonable and complied with the knock and announce requirement. In the course of a forcible entry, some damage to the door and frame is both expected and reasonable. Perry's claim fails as to the damage to her door. *See Weeks v. City of Chicago,* No. 12 C 10056, 2014 WL 3865852 (N.D. Ill. Aug. 6, 2014) ("Because a forcible entry was necessary, some damage to the door and door frame was reasonable; no reasonable jury could find otherwise.").

Perry's claim for unreasonable search also fails with respect to the damage to her ceiling. Perry's ceiling was damaged when Officer Gutierrez stepped through the ceiling while searching in her attic area. Officers executing a warrant occasionally must damage property to perform their duties. *Dalia v. United States*, 441 U.S. 238, 258 (1979). In doing so, however, "[t]he general touchstone of reasonableness which governs Fourth Amendment analysis . . . governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (citation omitted).

Only unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively violates the Fourth Amendment. *Liston v. Cty. of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997), as amended (Oct. 9, 1997) (citing *Tarpley v. Greene*, 684 F.2d 1, 9 (D.C. Cir. 1982); *see also, Bergquist v. Cty. of Cochise*, 806 F.2d 1364, 1369 (9th Cir. 1986) (no constitutional violation where property damage from search warrant is caused by officers' "mere negligence"). Here, Perry does not assert that it was unreasonable for Officer Gutierrez to search in the attic in the first place. Likewise, the uncontroverted testimony is that the damage was the product of an accident rather than excessive,

14

destructive zeal. Under the totality of the circumstances, the damage caused by Officer Gutierrez was not so unreasonable or excessively destructive as to rise to the level of a Fourth Amendment violation.

Lastly, the claim for unreasonable search fails insofar as it relates to destruction of the antique picture. This claim falls short because Perry has failed to present evidence as to any individual officer causing the damage to the picture. Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (citing *Minix v. Canarecci*, 597 f.3d 824, 833 (7th Cir. 2010). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct. *Id.* (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Perry did not observe any defendant officer destroy the picture. Moreover, all of the defendants deny having caused any such damage. As a result, Perry cannot satisfy § 1983's individual-responsibility requirement for purposes of summary judgment. *Id.* Summary judgment is granted as to Perry's claims for unreasonable search.

iii.     *Excessive Force and False Arrest Claims*

The third sub-group of Perry's Fourth Amendment claims is that the officers violated her constitutional rights by using excessive force, and subjecting her to false arrest. Turning to her false arrest claim, officers may detain occupants of a home while they execute a search warrant supported by probable cause. *Michigan v. Summers*, 452 U.S. 692, 704-05 (1981.) Perry argues that *Summers* is not controlling because the warrant

15

was arguably invalid in light of Officer Heath's omissions and misrepresentations. Rather, she asserts that, because the warrant was invalid, any subsequent detention pursuant to the warrant was *per se* unlawful. However, she cites no support for this argument. As discussed above, the warrant was facially valid and the defendant officers acted reasonably in relying upon it. Thus, even assuming the warrant was not in fact valid, the officers reasonably relied upon it in good faith and thus their detention of Perry was reasonable. *See Thayer v. Chieczewski,* 705 F.3d 237, 247 (7th Cir. 2012) (an officer is entitled to qualified immunity for false arrest when, even if the arrest was not permissible under the Fourth Amendment, a reasonable officer could have mistakenly believed that it was).

Perry's excessive force claim follows a similar analysis. The sum of the force used against Perry was that she was placed in handcuffs during the search.[4] She does not allege that the officers physically harmed her in any way. As above, her sole theory of liability is that the alleged invalidity of the warrant necessarily renders unreasonable any application of force whatsoever. Perry is simply wrong. "An officer's authority to detain incident to a search is *categorical*; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'"

---

[4]Perry adds in a parenthetical that she was "made to walk barefoot through broken glass to secure her dog in its cage in the garage." (DE # 27 at 17.) This assertion is made without citation to the record and the court can find no such testimony in Perry's affidavit (DE # 27-3) and deposition transcript (DE # 27-2). This factual assertion fails to meet the requirements of Federal Rule of Civil Procedure 56(c)(1)(A), and, as such, it will be disregarded. *Packer v. Trs. of Indiana Univ. Sch. of Med.,* 800 F.3d 843, 848 (7th Cir. 2015)

*Meuhler v. Mena,* 544 U.S. 93, 98 (2005)(quoting *Summers*, 452 U.S. at 705, n.19) (emphasis added). The detention for the duration of the search was reasonable because there was a facially-valid warrant to search Perry's home. *Id.* Summary judgment is granted as to Perry's false arrest and excessive force claims.

B.      *14th Amendment Due Process Claim*

Perry also claims that she was deprived of her property without due process of law in violation of the Fourteenth Amendment. Specifically, she asserts that her cash and personal property were seized pursuant to the warrant and that defendants have neither returned the property nor initiated forfeiture proceedings as required by Indiana law.

Under the Fourteenth Amendment, due process can be satisfied by a post-deprivation hearing or the availability of a state tort remedy. *Evers v. Outagamie Cty.,*  24 F.App'x 540, 542-43 (7th Cir. 2001). "In order to constitute an adequate remedy, the remedy provided by state law need not be the same as that available under § 1983." *Belcher v. Norton*, 497 F.3d 742, 751 (7th Cir. 2007) (citing *Hudson v. Palmer,* 468 U.S. 517, 535 (1984); *Parratt v. Taylor*, 451 U.S. 527, 544 (1981)). At the same time, "the relief afforded by the state remedy cannot be 'meaningless or non-existent.'" *Id.* at 751-52 (quoting *Easter House v. Felder,* 910 F.2d 1387, 1406 (7th Cir. 1990)).

In the present case, Perry's own brief points the way to an adequate state remedy. (DE # 27 at 19-20.) Indiana Code § 34-24-2-4 provides that:

"(d) If an action [for forfeiture] is not filed within (30) thirty days after receiving notice from any person claiming a right, title or interest in

17

the property, the claimant
> (1) is entitled to file a complaint seeking:
>> (A) replevin;
>> (B) foreclosure; or
>> (C) other appropriate remedy"

Perry makes no compelling argument that the remedy afforded by this statute is constitutionally inadequate. Under the circumstances, Perry cannot establish a claim under the Fourteenth Amendment. *Evers*, 24 F. App'x at 543 (no claim where state law replevin action was available to plaintiff). Defendants are entitled to summary judgment on Perry's due process claim.

C.    *State Law Claims*

Perry also brings various state law claims against defendants including trespass, unlawful entry, false arrest and false imprisonment. She also raises a *respondeat superior* claim against the City of Fort Wayne predicated on the defendant officers' liability for the state law claims.

The Indiana Tort Claims Act ("ITCA") provides immunity from liability to governmental employees acting within the scope of their employment if a loss results from "[t]he adoption and enforcement of or failure to adopt or enforce a law . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8); *Miller v. City of Anderson*, 777 N.E.2d 1100, 1103 (Ind. Ct. App. 2002). Perry's trespass and unlawful entry claims concern law enforcement actions undertaken by defendants in the scope of their employment as police officers. Defendants are entitled to immunity as to these claims under the ITCA.

18

Though they are not expressly barred by the ITCA, Perry's state law claims for false arrest and false imprisonment also fail. To begin with, although the terms are sometimes treated as interchangeable, false arrest and false imprisonment are distinct causes of action. *Shroyer v. United States* 940 F. Supp. 2d 914, 926 (N.D. Ind. 2012) (citing *Row v. Holt*, 834 N.E.2d 1074, 1088-89 (Ind. Ct. App. 2005)). Indiana law defines an "arrest" as "the taking of a person into custody that he may be held to answer for a crime." Ind. Code § 35-33-1-5; *Elliott v. Sheriff of Rush Cty. Ind.,* 686 F. Supp. 2d 840, 867 (S.D. Ind. 2010). Perry's temporary detention during the execution of the search warrant does not amount to an arrest under Indiana law. Thus she has no state law claim for false arrest.

Rather, Perry's claims are more appropriately analyzed under the rubric of false imprisonment. "Under Indiana law, false imprisonment is defined as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Earles v. Perkins,* 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003) (citing *Miller*, 777 N.E. 2d at 1104). Defendants are entitled to summary judgment on this claim as well. Under Indiana law:

> "It is . . . a general rule of law that a process or warrant not void on its face [and] issued by a tribunal . . . is a protection to officer executing it, and the officer is not required to look beyond the process or warrant to determine the validity . . . or to exercise his judgment touching its validity on a point of law . . . . It is only where a process is void on its face that the arresting officer is not protected."

*Stine v. Shuttle*, 134 Ind. App. 67, 74, 186 N.E.2d 168, 172 (1962).

Perry has already conceded that the warrant in question was facially valid such

that the defendant officers were entitled to qualified immunity on her federal claims.

Her concession of that point similarly forecloses her state law claim for false

imprisonment. The search warrant provided the defendants with a "good faith,

reasonable belief" that there was probable cause to search Perry's home and detain her

in the process. *See Conwell v. Beatty*, 667 N,E,2d 768, 775 (Ind. Ct. App. 1996) (false arrest

claim failed where warrant and judicial finding of probable cause provided officers

with good faith belief in probable cause). Defendants are entitled to summary judgment

on this claim as well.

Perry's *respondeat superior* claim is premised upon the individual defendants'

liability on the state law claims. *Respondeat superior* is a theory of vicarious liability

whereby an employer can be held liable for the state law torts of an employee if

committed in the scope of his employment. *Branham v. Celadon Trucking Serv., Inc.*, 744

N.E. 2d 514, 525, n.2 (Ind. Ct. App. 2001) Consequently, if the individual employee is

not liable on the underlying claims, the employer cannot be liable. *Id.* Because the

defendant officers are entitled to summary judgment on the state law tort claims,

Perry's *respondeat superior* claim fails as well.

Perry's last claim is her claim for punitive damages. In her response, Perry

concedes this claim against the city and all defendant officers besides Officer Heath. (DE

# 27 at 18-19.) As the court has pointed out, Officer Heath is not a named party to this

suit, therefore the court need not evaluate any claims against him. Summary judgment

is granted for defendants as to Perry's claim for punitive damages.

**IV.    CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (DE # 24) is **GRANTED**. Because no claims remain against any defendant in this action, the clerk is directed to **ENTER FINAL JUDGMENT** in favor of defendants stating that plaintiff Kimberly Perry shall take nothing by way of her complaint.

**SO ORDERED**.

Date: July 21, 2017

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT